J-S01001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.L.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.M.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1327 MDA 2023 |

Appeal from the Decree Entered September 6, 2023
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s):  #34-2022

| | | |
|---|---|---|
| IN RE: J.J.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.M.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1328 MDA 2023 |

Appeal from the Decree Entered September 6, 2023
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s):  #35-2022

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: FEBRUARY 22, 2024**

In these consolidated appeals, T.M.A. ("Mother") appeals from the

decree entered in the Court of Common Pleas of Northumberland County

_____

[*] Retired Senior Judge assigned to the Superior Court.

which granted the petition of J.S. ("Father") and involuntarily terminated her parental rights to her minor children, S.L.S. (d.o.b. 08/11) and J.J.S. (d.o.b. 08/13) (collectively "Children"), pursuant to Section 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2511-2514.[1] Appointed counsel has filed an application to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981).[2] After careful review, we affirm the decree and grant counsel's application to withdraw.

Mother and Father were never married, and the Children have lived with Father since their births, with Mother inconsistently appearing in their lives. Father has been engaged to E.N. since 2019. She has shared in the care and custody of the Children since August 2020.

On September 23, 2020, Father filed a Petition for Protection of Abuse ("PFA") against Mother that listed the Children as protected parties.[3] After the court granted the temporary PFA order against Mother, it conducted a final PFA hearing on October 21, 2020. The final PFA order prohibited Mother from

_____

[1] The order also granted Father and his fiancé, E.N. authority to proceed with the adoption of the Children without Mother's further consent, which Mother does not challenge.

[2] In *In re V.E.*, 611 A.2d 1267 (Pa.Super.1992), this Court authorized appointed counsel to file a petition to withdraw pursuant to *Anders* in an appeal involving the involuntary termination of parental rights. *See In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992).

[3] It is not clear from the record why Father filed the PFA petition.

having any direct or indirect contact with Father or the Children. ***See*** N.T. Involuntary Termination of Parental Rights ("ITPR") Hearing, 9/05/23, at 5; Final PFA Order, 10/21/20, at 1.

The custody provision of the PFA order awarded Father with temporary exclusive custody of the Children and awarded Mother with one hour of visitation per week at a neutral location, to be supervised by an impartial person approved by both parents. ***See*** Final PFA Order, at 2. The order required that the third party be accountable to the court and execute a letter of accountability. Also, it expressly directed that the custody provisions were temporary, that "either party may initiate custody proceedings pursuant to the custody statute at 23 Pa.C.S.A. §§ 5321-5340," and that any custody order filed after such proceedings would supersede the PFA order's custody provisions. ***Id.*** at 3. Finally, it provided that the PFA against Mother may be dismissed upon proof of her completion of anger management classes and counseling. ***See id.*** at 2.

On September 26, 2022, Father filed a Petition to Involuntarily Terminate Mother's parental rights. The court held a hearing on September 5, 2023, at which Mother, Father, E.N., and the Children's guardian *ad litem* ("GAL"), Attorney Kathleen Lincoln, testified. The following material facts were presented:

It is undisputed Mother has not seen the Children since the October 2020 PFA hearing. Mother communicated with Father through E.N. Despite

conceding she was aware she could institute custody proceedings, Mother failed to do so. Father and Mother initially agreed to Mother's boyfriend, J.C., as a neutral third-party to supervise Mother's visits pursuant to the PFA order, but J.C. never notified either Father or E.N. that Mother wanted such time. Mother and Father then agreed that E.N. could assume the role, but, again, Mother never contacted E.N. to have time with the Children. Mother admitted she has never sent the Children any cards or called to speak to them using E.N.'s cell phone number, which Mother testified she lost. She stated that Father and E.N. did not create barriers to her seeing the Children.

E.N. testified that she takes the Children to all appointments and, when she emails or texts Mother to apprise her of what is going on with the Children, she receives no response. While E.N. did present Mother with a list of stipulations she wanted her to agree to before seeing the Children, Mother testified that she agreed with them. She did not file a custody action seeking to see the Children under the agreed-upon conditions or a motion for contempt against E.N. and Father for making visitation contingent on them. In fact, she told E.N. that she was "done" with the Children. N.T. ITPR Hearing, 9/5/2023, at 29. When questioned about why she has not seen the Children in three years, Mother testified that she was using that time to "better herself" by attending mental health programs; however, she still has not attended the anger management classes and counseling that might have resulted in the PFA's dismissal. **Id.** at 63; Final PFA Order, at 2.

The GAL testified that the Children told her they know who Mother is, but they have not seen her in a long time. They call E.N. their "other mom." *Id.* at 41. She stated that it is in the Children's best interest to involuntarily terminate Mother's parental rights because they need permanency and are doing well in their current situation.

The same day, the court entered an order granting Father's petition and terminating Mother's parental rights. Mother timely appealed and filed a court-ordered statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Counsel has filed an *Anders* brief and application to withdraw on the basis that the appeal is wholly frivolous.[4] Mother has not responded.

Before reaching Mother's issues, we must first consider counsel's request to withdraw. *See Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009).

The standard of review for an *Anders* brief is well-settled.

Court-appointed counsel who seek to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal but which does not resemble a "no-merit" letter or *amicus curiae* brief; and (3) furnish a copy of the brief to the [appellant] and advise the [appellant] of his or her

---

[4] We note that Father has not filed an Appellee's brief pursuant to Pa.R.A.P. 2112.

> right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.

*Id.* (citations and quotation marks omitted); *see also Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005) (requiring counsel "to attach to their petition to withdraw a copy of [the] letter sent to their client advising him or her of their rights"). Further, our Supreme Court has held that *Anders* briefs must contain "a discussion of counsel's reasons for believing that the client's appeal is frivolous[.]" *Commonwealth v. Santiago*, 978 A.2d 349, 360 (Pa. 2009).

Instantly, counsel's *Anders* brief and application to withdraw comply with the applicable technical requirements and reveal that she has made "a conscientious examination of the record [and] determined that the appeal would be frivolous[.]" *Lilley*, 978 A.2d at 997 (citation omitted). Additionally, the record establishes that counsel served Mother with a copy of the *Anders* brief and application to withdraw, and a letter of notice, which advised Mother of her right to retain new counsel or to proceed *pro se* and raise additional issues with this Court.[5] *See id.* Further, the application and brief cite "to anything that arguably might support the appeal[.]" *Id.* (citation omitted);

---

[5] On December 4, 2023, this Court issued a *per curiam* order advising counsel that she had failed to attach a letter advising Mother of her rights to her petition to withdraw and directing counsel to file the *Millisock* letter with this Court and to supply a copy of same to Mother. Counsel filed the November 26, 2023 letter with this Court on December 6, 2023. *See* Order, 12/04/23; Response to Order, 12/06/23.

*see also Anders* Brief, at 11-17. As noted by our Supreme Court in *Santiago*, the fact that some of counsel's statements arguably support the frivolity of the appeal does not violate the requirements of *Anders*. *See Santiago*, 978 A.2d at 360-61.

Having concluded that counsel's application and brief comply with the technical *Anders* requirements, we must "conduct [our] own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Lilley*, 978 A.2d at 998 (citation omitted).

The *Anders* brief raises four questions for our review:

1.      Whether the court erred by terminating [Mother]'s parental rights preventing her from seeing her [Children] when there was a [PFA] action filed against her severely limiting her ability to see [Children]?

2.      Whether the court erred by terminating [Mother]'s parental rights when there were no appropriate resources offered to [Mother] when the [PFA] order required any supervisor to file an Affidavit of Accountability?

3.      Whether the court erred by terminating [Mother]'s parental rights when the Coronavirus pandemic caused a challenge for [Mother] to complete the required court ordered programs as required under the [PFA] order?

4.      Whether the court erred by terminating [Mother]'s parental rights when Father and proposed adoptive mother actively prevented Mother from seeing [Children]?

(*Anders* Brief, at 7) (unnecessary capitalization and answers omitted).

Our standard of review in cases involving the involuntary termination of parental rights is extremely deferential:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (brackets, internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis. *See* 23 Pa.C.S.A. § 2511. First, the orphans' court determines if the parent's conduct

- 8 -

warrants termination under one of the eleven grounds enumerated in Section 2511(a). If the court determines that the petitioner has established grounds for termination under Section 2511(a), then it assesses the petition under Section 2511(b), which focuses upon the child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Instantly, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(1) and (b) of the Adoption Act, which provide:

> **(a) General rule**.—The rights of a parent in regard to a child may be terminated after a petition filed … [when]:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \*   \*   \*
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b).

> Although "parental duties" are not expressly defined,
>
> our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of

such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

***In re Adoption of L.A.K.***, 265 A.3d 580, 592 (Pa. 2021) (brackets, internal citations and quotation marks omitted). Additionally, "[f]ortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities." ***Id.*** (citation and internal quotation marks omitted).

"[T]he question [of] whether a parent has failed or refused to perform parental duties must be analyzed in relation to the particular circumstances of the case." ***In re Burns***, 379 A.2d 535, 540 (Pa. 1977). Therefore, when deciding if the record supports the involuntary termination of a parental rights, the orphans' court must examine the totality of the circumstances, which includes consideration of:

> (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b).

***Id.*** (citation omitted).

Instantly, we agree with counsel that Mother's claims are frivolous. Contrary to her assertion that the PFA order severely limited her ability to see the Children, it is undisputed that the order granted Mother weekly supervised custody, and she has not tried to either see or communicate with the Children

- 10 -

in any way since the October 2020 PFA hearing. **See** N.T. ITPR Hearing, 9/5/2023, at 5, 28, 32, 41, 46, 54, 58, 63.

If Mother disagreed with the final PFA order's temporary custody provisions, she was given an avenue to modify the temporary custody arrangement because the order expressly directed the parties to file a custody action to modify the terms of the custody arrangement. Mother failed to take this action. **See id.** at 16, 68, 70; Final PFA Order, at 3. Moreover, the PFA order's terms provided that, if Mother "completed anger management classes and counseling, the current PFA may be dismissed." Final PFA Order, at 2. Mother failed to complete anger management classes, despite attending multiple mental health programs during April and May 2021. **See** Exhibit M-1, Completed Classes. Although she argues for the first time that she was unable to attend anger management classes due to Covid-19 related challenges, she waived this claim by raising it for the first time on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

However, even if she had not waived this issue, it would not merit relief. Mother attended multiple mental health programs during April and May 2021. **See** Exhibit M-1, Completed Classes. If she could be at these classes during the relevant time-period, we fail to see how it was not possible for her to also attend the anger management therapy and counseling to get the final PFA order dismissed. **See** Final PFA Order, at 2. Mother presented no evidence

other than her own testimony that the Covid-19 crisis prevented her from attending anger management classes. It was Mother's burden to overcome any obstacles that allegedly prevented her from seeing the Children **See** **L.A.K.**, 265 A.3d at 592. Therefore, Mother's excuse that she did not see the Children because the PFA order severely limited her ability to do so lacks merit.

Mother also claims that Father and E.N. precluded her from seeing the Children. However, they both testified that they never precluded Mother from contact with the Children, and Mother conceded at the hearing that they did not create barriers. **See id.** at 17-18, 30, 66, 69. Mother had E.N.'s cellphone number and email address to arrange times to visit or speak with the Children, but she stopped responding to E.N. and never reached out to her to make such arrangements. **See id.** at 6., 25-6.

Although Mother maintains that E.N. gave her stipulations which she had to agree to before she could see the Children, Mother stated at the hearing that she had agreed to the stipulations. **See id.** at 64. Also, while she now complains that E.N. did not file the Affidavit of Accountability that would have allowed E.N. to supervise Mother's visits with the Children, the undisputed evidence is that Mother never asked to see the Children, sent them cards, or requested any other communication. **See id.** at 19, 32, 41, 46, 54, 58. Moreover, as observed by the GAL, even if Father and E.N. tried to block visitation in any way, whether by not filing an Affidavit of Accountability or by

purposely prohibiting her from seeing the Children, it is undisputed that Mother made no effort to assert her rights by filing either a contempt or custody petition. **See id.** at 46; **see also id.** at 16, 68, 70. In fact, she told E.N. that she was "done" with the Children. **Id.** at 29. Therefore, based on all the foregoing, the orphans' court properly found there was clear and convincing evidence that Mother "evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

Mother does not challenge the sufficiency of the evidence supporting the court's finding that termination was also proper under Section 2511(b) of the involuntary termination analysis.[6] To be thorough, however, we have reviewed the record and confirm that the evidence was sufficient to support a finding that Mother's termination of parental rights was in the Children's best interest. Although Mother testified that she and the Children shared a bond prior to 2020, there is no evidence that the bond still exists. The GAL testified that, although the Children know who Mother is, they are angry with her because she has not reached out to see them "in a long time." N.T. ITPR Hearing, 9/5/2023, at 41-42. The GAL further stated that the Children, who have lived

---

[6] Generally, this issue would be waived. **See Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that failure to preserve issues by raising them in concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in waiver of those issues). However, because counsel has filed an **Anders** brief, we decline to find waiver.

in Father's home since birth and are now ten and twelve years old, are doing well. *Id.* at 41; *see id.* at 4, 9-10. The Children call E.N their "other mom, " and she and Father meet all of the Children's needs. *See id.* at 46. The GAL opined that involuntary termination of Mother's parental rights would not cause irreparable harm and would in fact be in the Children's best interest because Mother has made no effort to assert her parental rights; lastly, she testified, it is best because the Children need permanency. Father and E.N.'s testimony corroborated the GAL's opinion that termination of Mother's parental rights would be in the Children's best interest because they had no bond with her and it would not cause irreparable harm. *See id.* at 9-10, 34.

Based on our review, the orphans' court properly found that termination of Mother's parental rights is in the Children's best interest pursuant to Section 2511(b). Therefore, we agree with counsel that Mother's challenge to the orphans' court's decree involuntarily terminating her parental rights is frivolous.

Decree affirmed. Application to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/22/2024